IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN CRANSTON, III | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| PJM Interconnection LLC, and | : | NO. 13-04916 |
| PJM Interconnection LLC Pension Plan, | : | |
| Defendants. | : | |

**MEMORANDUM**

**L. Felipe Restrepo, U.S. District Court Judge**　　　　　　　　　　**October 31, 2014**

　　　　Plaintiff John Cranston, III ("Plaintiff") brings this action pursuant to the Employee Retirement Income Security Act ("ERISA") § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) against Defendants PJM Interconnection LLC and PJM Interconnection LLC Pension Plan (collectively, "Defendants") for failure to pay pension benefits allegedly owed under Plaintiff's employee retirement plan. Pending before the Court are the parties' cross-motions for summary judgment. For the following reasons, Plaintiff's motion for summary judgment will be denied and the Defendants' motion will be granted.

　　**I.　　BACKGROUND**

　　　　**a.　Factual History**[1]

　　　　Plaintiff, a Pennsylvania resident, began working for the Norristown, Pennsylvania-based company Defendant PJM Interconnection LLC ("PJM") in May 1997. Pl.'s Statement Undisputed Facts ("PSUF") (ECF Doc. No. 22-3) ¶ 2; Defs.' Statement of Disputed Facts ("DSDF") (Doc. 27-1) ¶ 2; Affidavit of John C. Cranston, III in Support of Pl.'s Mot. Summ. J.

---

[1]　　The facts detailed herein are undisputed unless otherwise noted.

("Cranston Aff.") (Doc. 22-2) ¶ 1.  During his employment, Plaintiff was an active participant in and covered by the terms of the PJM Interconnection LLC Pension Plan ("Pension Plan").  DSDF ¶ 2.  PJM both administers and funds the Pension Plan, which is subject to ERISA, 29 U.S.C. § 1001 *et seq.*  DSDF ¶ 3; Joint App'x Docs. Cited Cross-Mots. Summ. J. ("JA") (Doc. 25) 48, 64, 101, 129-32.[2]

> i. *Relevant Pension Plan Documents*

Plaintiff's allegations in support of his claim for unpaid benefits implicate two different versions of the Pension Plan that were in effect during various stages of Plaintiff's employment with PJM: (1) the March 1, 1999 Pension Plan ("1999 Plan"), JA 2-45; and (2) the August 1, 2008 Pension Plan ("2008 Plan"), JA 99-147.  The Pension Plan maintained Summary Plan Descriptions ("SPDs") for both the 1999 Plan and the 2008 Plan, which were designed to provide general descriptions of the terms of the corresponding Pension Plan.  JA 47-65; 149-67.  Both SPDs stated the following on the first page: "If there is any conflict between this summary and the Plan document, the terms of the Plan document control."  JA 48, 150.

The 1999 Plan outlined three types of retirement benefits available to employees—Normal, Postponed, and Early Retirement—and the 1999 Plan SPD provided short descriptions of these three types.  JA 12, 50-51.  On November 29, 2006, PJM's Benefits Administration Committee approved the amendment of the Pension Plan to add a fourth retirement benefit option: Phased-In Retirement.[3]  JA 86.  By December 14, 2007, there was an update to the Human Resources Benefits Website, accessible only to employees, on Phased-In Retirement.  Mot. Summ. J. Tr. 27:2-6, Sept. 15, 2014 ("9/15/14 Tr."); JA 89.  This update added

---

[2]    Citations to the Joint Appendix correspond with the bates labels applied to each page therein; leading zeros are omitted from all bates range citations.

[3]    Although the Plan documents refer to "Phased-In Retirement," the parties also refer to this option as "Phased Retirement."

2

a brief summary of Phased-In Retirement and a link to a Frequently Asked Questions ("FAQ") document, which would provide "more information on phased retirement." JA 89.[4] The FAQ stated, in relevant part:

> When you [participating employee] elect to fully retire (i.e., stop working at PJM), your monthly pension benefit would be calculated as if you hadn't received your benefit starting at the time of phased retirement. If you took a lump sum, your additional pension benefit, if any, would be *equal to your benefit amount as of your full retirement date minus the amount you already received*.

JA 91 (emphasis added). The FAQ also stated that "PJM intends to administer the plan as we have described in *this* document." JA 94 (emphasis added).

On March 15, 2008, PJM circulated an e-mail to employees announcing that electronic documents regarding benefits information would be available on the Human Resources Benefits Website. JA 97; 9/15/14 Tr. 39:18-24. And in August 2008, the Plan was amended to include Phased-In Retirement as a retirement benefit option. JA 114-15. This option was offered to any participating employee of the Pension Plan who attained the age of 62 and had worked at least five years of vesting service at the company. *Id*. Phased-In Retirement permitted participants to continue working at PJM while receiving retirement benefits, in the form of annuity or a lump sum, prior to actual retirement. JA 113, 119. Further, the 2008 Plan terms stated that PJM would make a final adjustment of the Pension Plan payments at the date of actual retirement by deducting "the Actuarial Equivalent of any benefits paid to the Participant since his Benefit Commencement Date." JA 113, 115. The SPD was also updated to reflect the addition of the Phased-In Retirement Benefit Option and dated August 1, 2008. JA 153. Other than the March 15, 2008 e-mail, no notice of these changes to the Pension Plan was distributed to employees. *See* 9/15/14 Tr. 42:3-19.

---

[4]   Defendants state that there is also a link to the SPD on this page, but there is no link to the SPD clearly labeled on the screenshot of the webpage submitted to the Court with the parties' cross-motions. *See* JA 89.

*ii. Plaintiff's Election of Phased Retirement*

According to Plaintiff, PJM's Manager of Compensation and Benefits Maureen McCormick ("McCormick") advised him in late 2007 that PJM would be modifying the existing Pension Plan to introduce Phased-In Retirement; Defendants dispute that this exchange occurred before May 2008.  PSUF ¶ 4; Cranston Aff. ¶ 2; DSDF ¶ 4.  But the parties agree that during the period of June 2007 to November 2008, Plaintiff communicated with McCormick several times to clarify any outstanding questions he had on Phased Retirement.  DSDF ¶ 6.  Plaintiff alleges that from these conversations, he understood that if he elected Phased-In Retirement, he would receive a lump-sum payment or an annuity of his pension benefits prior to retirement, while continuing to work and accrue benefits, and he would receive an additional, final payment of benefits at actual retirement.  PSUF ¶ 6-7.  Further, Plaintiff alleges, and Defendants dispute, that McCormick explained the final payment at retirement would be calculated *without* an actuarial adjustment of the earlier payout(s).  PSUF ¶ 8.

In November 2008, Plaintiff met with Paris Jenkins of PJM's Compensation and Benefits department.  DSDF ¶ 9.  Although the parties agree that a copy of the 2008 Plan was not provided to the Plaintiff during this meeting, they disagree as to what documents were actually given.  *Id.*  Plaintiff alleges that he was given a packet containing a 1999 Plan SPD and the FAQ.  *Id.*

Plaintiff elected for Phased-In Retirement on November 18, 2008, and requested to collect a lump-sum on December 1, 2008.  JA 182-84.  Following his election, Plaintiff alleges and Defendants deny that Plaintiff contacted McCormick in May 2009 to ask how the calculations for lump-sum and annuity payments would differ at retirement.  DSDF ¶ 20; Cranston Aff. ¶ 25.  At this time, according to Plaintiff, McCormick notified Plaintiff that he was mistaken on his understanding of the calculations, and McCormick explained that the calculation

4

of the final payment at retirement would reflect an actuarial adjustment of the earlier payout already given to the Plaintiff. DSDF ¶ 20; Cranston Aff. ¶ 25. Plaintiff then met with various PJM representatives several times from July 2009 to June 2010, to discuss how Phased-In Retirement would impact Plaintiff's benefits. DSDF ¶ 21-22; Cranston Aff. ¶ 29.

Plaintiff retired in March 2013. Cranston Aff. ¶ 31. At that time, Plaintiff received a payout of $42,147. JA 190. Per the terms of the 2008 Plan, this sum reflected the difference between the *actuarial equivalent* of Plaintiff's December 2008 lump sum payment of $363,425 and his accrued benefit of $567,030. *See* JA 190-201. Plaintiff alleges that if PJM had used the calculation outlined in the FAQ, he would have received the difference between the December 2008 lump-sum payment he received—without actual adjustment—and his accrued benefit of $567,030, which totaled $203,605. JA 190. This amounts to $161,458. *Id*.

Plaintiff appealed to the administrator of the Plan on March 19, 2013, to have the calculation of his benefits reviewed. *Id*. On June 3, 2013, his appeal was denied. JA 198-201. The reason given for denial was that the calculation of Plaintiff's benefits was proper "pursuant to §4.2 of the Plan, [because] the adjustment [to the final payment] must be reduced by the actuarial equivalent of the benefits that were previously paid." JA 200. As a result, Plaintiff initiated this action against Defendants, alleging that his retirement benefits have been improperly calculated under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

### b. Procedural History

Plaintiff filed his original Complaint against Defendants on August 22, 2013, alleging several claims: (1) breach of fiduciary duty pursuant to 29 U.S.C. § 1002(21)(A); (2) promissory estoppel; and (3) equitable estoppel. *See generally* Compl. (Doc. 1). After Defendants filed a motion to dismiss Plaintiff's Complaint, Plaintiff filed an Amended Complaint on November 4,

2013, alleging: (1) breach of contract pursuant to 29 U.S.C. § 1002(21)(A); (2) promissory estoppel; and (3) equitable estoppel. *See generally* First Am. Compl. (Doc. 6). Defendants again moved to dismiss Plaintiff's First Amended Complaint, and, with leave of the Court, the Plaintiff filed a Second Amended Complaint on January 2, 2014. Docs. 7, 8, 11, 12. The sole claim set forth in Plaintiff's Second Complaint was a claim for "Failure to Pay Benefits" under Section 502(a)(1)(B) of ERISA, 29 U.S.C. 1132(a)(1)(B). *See generally* Second Am. Compl. ("SAC") (Doc. 12). Defendants once again moved to dismiss the Second Amended Complaint on January 13, 2014, and the court held oral argument on the motion on February 19, 2014. Docs. 13, 14, 15. At oral argument on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, Plaintiff confirmed that he was *only* pursuing a claim for unpaid benefits under Section 502(a)(1)(B). Mot. Dismiss Hr'g Tr. 3:12-4:4, February 19, 2014 ("2/19/14 Hr'g Tr."). Defendants' Motion to Dismiss was denied. Doc. 17.

The parties filed cross-motions for summary judgment on May 27, 2014, and both parties filed response papers. Docs. 22-29. The Court held oral argument on September 15, 2014, and the motions are now ripe for disposition.

II.     **LEGAL STANDARD**

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" to the dispute if it might affect the outcome of the case and the dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Where there are cross-motions for summary judgment, the rules are the same. *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008). Cross-motions "are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001) (quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir.1968)).

### III.    DISCUSSION

The parties agree that an "arbitrary and capricious" standard of review applies to Defendants' calculation of pension benefits. 9/15/14 Tr. 11:10-12:4. The parties disagree, however, as to whether Defendants' calculation of benefits owed to Plaintiff, which resulted in a denial of $161,458, was arbitrary and capricious.

#### a.  Standard of Review

As a general rule, courts are to review the plan administrator's decision to deny benefits under a *de novo* standard; however, an "arbitrary and capricious"[5] standard applies if the plan granted the administrator or fiduciary with discretionary authority to determine the eligibility of the benefits or interpret the terms of the plan. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116 (2008); *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011). Therefore, a decision

---

[5]   The Third Circuit has clarified that the "arbitrary and capricious" and "abuse of discretion" standards of review are "'essentially identical' mode[s] of analysis" in the context of ERISA suits. *Creelman v. Carpenters Pension & Annuity Fund of Phila. & Vicinity*, 945 F. Supp. 2d 592, 600 n.6 (E.D. Pa. 2013) (quoting *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 n.2 (3d Cir. 2011)).

will be set aside only when "it is made without reason, supported by substantial evidence or erroneous as a matter of law." *Miller*, 632 F.3d at 845. Under this deferential standard, the "scope of review is narrow and the court is not free to substitute its own judgment for that of the defendant's" benefit decision. *Rowello v. Healthcare Benefits, Inc.*, No. 12-4326, 2013 WL 6510475 at *4 (D.N.J. Dec. 13, 2013). As part of this analysis, a court must consider whether there is a conflict of interest present; such a conflict may arise when a plan gives discretionary authority to a plan administrator who is also the payor of the claims. *Id*. But this only one of many factors to take into account, and the court must base its determination "on the totality of the [plan]'s actions." *Branca v. Liberty Life Assurance Co. of Boston*, No. 13-740, 2014 WL 1340604, at *15 (E.D. Pa. Apr. 3, 2014); *see Glenn*, 554 U.S. at 117.

As stated, the parties agree that the arbitrary and capricious standard of review applies. 9/15/14 Hr'g Tr. 12:2-4. The Court agrees. Both the 1999 and the 2008 Plans name as the Benefits Administration Committee as the Plan Administrator and give this Committee the authority to effectuate the plan. (JA 29-30, 134) ("The Administrator . . . may construe the Plan, correct defects, supply omissions and reconcile inconsistencies to the extent necessary to effectuate the Plan and such action shall be conclusive."). Accordingly, the Court will apply the arbitrary and capricious standard of review to the Administrator's calculation of benefits that resulted in the payment to Plaintiff of only $42,147, which is $161,458 less than Plaintiff alleges he is owed. *See* 9/15/14 Tr. 32:21-24, 34:8-10.

### b. Denial of Benefits

In his Second Amended Complaint, Plaintiff asserts a single cause of action under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), for "Failure to Pay Benefits."[6] SAC 3. This provision of ERISA authorizes an individual participant or beneficiary of a plan covered by the Act to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A plaintiff seeking to recover benefits under this provision must demonstrate that he is actually "due" such benefits. In other words, he must show that he has a legally enforceable right to those benefits and the plan administrator improperly denied those benefits. *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566 (3d Cir. 2006).

Plaintiff asserts that he is due $161,458 in benefits that have not yet been paid due to Defendants' "improper[] miscalculat[ion] of Plaintiff's benefits" due under the terms of the Plan. SAC ¶ 33. Plaintiff's position, set forth in his summary judgment papers, *see* Docs. 22, 28, can be summarized as two alternative arguments. First, Plaintiff argues that the FAQ served as the Pension Plan's SPD of the Phased-In Retirement option, and thus, should be treated as an SPD under ERISA. *See* Pl.'s Br. Mot. Summ. J. ("Pl.'s Br.") (Doc. 22-1) 12. In essence, Plaintiff argues that the FAQ document should be considered as a partial SPD or amendment to the existing Plan SPD. Plaintiff supports this contention by reviewing the factors set forth by the Third Circuit in *Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1315-16 (3d Cir. 1991), to determine whether a document should be considered an SPD. *Id.* at 13-19. Since, according to Plaintiff, the *Gridley* analysis suggests that the FAQ is indeed an SPD, Plaintiff further argues that the terms of the FAQ document should control over any conflict with the terms of the

---

[6] As noted, at oral argument on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, Plaintiff confirmed that he was *only* pursuing a claim for unpaid benefits under Section 502(a)(1)(B). 2/19/14 Hr'g Tr. 3:12-4:4.

operative Plan document pursuant to *Burstein v. Retirement Account Plan for Employees of Alleghany Health Educ. and Research Found.*, 334 F.3d 365, 377-39 (3d Cir. 2003).  *Id.*  Further, Plaintiff appears to suggest that the operative Plan Document is the 1999 Plan, since Plaintiff never received the 2008 Plan before he elected Phased-In Retirement and, in fact, was given a copy of the 1999 Plan during a meeting about his retirement benefit options.  *Id.* at 17-19.  Plaintiff concludes that because the 1999 Plan was silent on Phased-In Retirement, the FAQ document controls, and Plaintiff's Phased Retirement Benefit should have been calculated according to the method listed in the FAQ document.  *See* Pl.'s Br. 17.

Defendants agree with Plaintiff's contention that the terms of an SPD control to the extent that the SPD conflicts with the terms of the operative Plan document.  Defs.' Resp. Pl.'s Mot. Summ. J. ("Defs.' Resp.") (Doc. 26) 3.  Defendants argue, however, that the *Gridley* factors weigh against a finding that the FAQ document was any type of SPD, and as a result, the terms of the Plan document—not the FAQ—controlled the calculation.  *Id.* at 3-10.  Defendants further argue that even *if* the FAQ document was deemed an SPD, the SPD was formally amended *after* the FAQ document was published and given to Plaintiff and *before* he elected Phased retirement.  *Id.* at 10.  Any argument by Plaintiff that the 2008 Plan is not the operative Plan document because Plaintiff was not given a copy is without merit, according to Defendants, because notice was proper under ERISA.  *Id.* at 11.

Plaintiff advances as his second, alternative argument that even if the Court decides the FAQ does not qualify as an SPD, or is a "faulty" SPD, he may still recover if he is able to show significant reliance on or possible prejudice flowing from the document.  Pl.'s Br. 19.  Defendant counters that "a document cannot be a *faulty* summary plan description without first being a summary plan description."  Defs.' Resp. 12 (emphasis in original).  Defendant also argues that

10

such an argument cannot be advanced in support of a claim for unpaid benefits under 29 U.S.C. § 1132 (a)(1)(B). *Id.* at 12-13.

Both parties' briefs dedicate considerable portions of their argument to an analysis of the *Gridley* factors. The Court presumes that the parties attach such importance to the outcome of the *Gridley* analysis in light of the Third Circuit's holding in *Burstein,* 334 F.3d at 378, that "where a summary plan description conflicts with the plan language, it is the summary plan description that will control." But parties reliance on this proposition of *Burstein* is misplaced here, where Plaintiff maintains only a claim for failure to pay benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

Since *Burstein,* the United States Supreme Court addressed the weight to be afforded to SPDs in evaluating claims under ERISA § 502(a)(1)(B). *CIGNA Corp. v. Amara*, 563 U.S. __, 131 S.Ct. 1866 (2011).[7] In *Amara*, CIGNA modified its employee retirement plan such that most plan participants received a smaller retirement payout than they would have under the previous plan. *Id.* at 1874. CIGNA had not alerted employees to the potential impact of this modification, either in the updated SPD or the explanatory newsletters sent out to the employees before the new plan was adopted and became effective. *Id.* But the Court held that it was nevertheless improper under Section 502(a)(1)(B) to enforce the terms of the SPD over the plan language in order to provide relief where an SPD had proved misleading. *Id.* at 1879. The Court reasoned that the syntax of another section of ERISA, § 102(a), which obliges plan administrators to furnish SPDs and requires that participants and beneficiaries "be advised of their rights and obligations 'under the plan,'" suggests that the information *about* the Plan provided by SPDs "is not itself *part* of the plan." *Id.* at 1877 (emphasis in original). Ultimately,

---

[7] The Court notes that neither party alerted the Court to this precedent in their summary judgment papers or at oral argument.

the Court held that the terms of SPDs cannot be enforced under this provision as the terms of the Plan itself. *Id.* at 1877-78 (finding that "the summary documents, important as they are, provide communication with beneficiaries about the plan, but that their statements do not themselves constitute the terms of the plan for purposes of § 502(a)(1)(B).") *Id.* at 1878.

Courts in this Circuit evaluating claims for unpaid benefits brought under Section 502(a)(1)(B) after *Amara* have generally reiterated that they cannot substitute or add to the terms of an ERISA benefit plan, and instead must strictly adhere to the terms of the Plan in place at the time the benefits vested in the participant. *See, e.g.*, *Romero v. Allstate Ins. Co.*, No. 01-6764, 2014 WL 796005 (E.D. Pa. Feb. 27, 2014), *opinion clarified on denial of reconsideration,* (E.D. Pa. Apr. 7, 2014) (dismissing Section 502(a)(1)(B) claim, where plaintiffs sought to repeal the terms of the Plan which was improperly amended under ERISA, and finding that the administrator correctly interpreted the terms of the plan that existed at the time benefits vested in the plaintiffs); *Conn. Gen. Life Ins. v. Roseland Ambulatory Ctr. LLC*, No. 12- 05941, 2013 WL 5354216 at *2 (D.N.J. Sept. 24, 2013) (finding that the terms of the SPD are not legally binding when the SPD conflicts or creates terms not present in the governing benefits plan); *Baker v. Pa. Econ. League, Inc. Ret. Income Plan*, 811 F. Supp. 2d 1136, 1142 (E.D. Pa. 2011) (provision added to retirement plan, which was never formally added as an amendment to the plan, was not considered by the court under a claim of denial of benefits because it was not a term of the Plan).

Courts in this Circuit that have given deference to the terms of the SPD have done so only in circumstances not present here. *See, e.g.*, *Frey v. Herr Foods Inc. Employee Welfare Plan*, No. 11-1416, 2012 WL 6209896 at *3-4 (E.D. Pa. Dec. 13, 2012) (terms in summary document generally unenforceable and could only be given deference when provisions are specifically identified as legally binding or are incorporated into the plan); *Bd. of Trustees of the*

*Nat. Elevator Indus. Health Benefit Plan v. McLaughlin*, No. 14-1308, 2014 WL 4852096 at *1, n.1 (3d Cir. Oct. 1, 2014) (non-precedential) (permitting substitution of terms of SPD for terms of benefits plan because parties had consistently done so, but acknowledging that terms of SPD are generally unenforceable).

Applying the reasoning in *Amara,* even *if* this Court were to find that the FAQ document was an SPD according to the *Gridley* framework, it would have no bearing on Plaintiff's ability to recover the unpaid benefits he seeks pursuant to Section 502(a)(1)(B). It is the terms of the Plan document that control and limit the bounds of the Court's analysis in Section 502(a)(1)(B) claims. Nowhere in the terms of the 2008 Plan that was in effect at the time Plaintiff elected Phased-In Retirement does the calculation method contemplated in the FAQ exist.[8]

In the letter Defendants provided to Plaintiff to explain the decision of the Benefits Administration Committee, it was stated that the Committee's decision was based on the terms of the 2008 Plan. JA 198-201. And the 2008 Plan explicitly and unambiguously provides for an actuarial adjustment of the Phased-In Retirement benefit, which Plaintiff does not dispute. JA 113-15. Accordingly, there is sufficient evidence that a reasonable person would agree with PJM's calculation of Plaintiff's benefits consistent with the terms of the 2008 Plan, and thus that the decision of the Administrator was not arbitrary and capricious.[9]

---

[8] Plaintiff alleges in his Second Amended Complaint that Defendants: failed to provide adequate notice of the 2008 Plan; proactively provided the then-outdated 1999 Plan, SPD, and FAQ document when he was contemplating election of Phased-In Retirement; and otherwise misrepresented Plaintiff's Phased-In retirement benefit. Plaintiff appears to argue in his summary judgment papers that these circumstances warrant the application of the versions of the Plan or other documents that preceded the 2008 Plan documents, which Plaintiff does not dispute were in effect before his election of Phased-In retirement. However, Plaintiff has not cited to authority that suggests a claim for failure to pay benefits under ERISA § 502(a)(1)(B) specifically is the appropriate vehicle for recovery under these theories.

[9] Although the Court recognizes the conflict of interest present here, because PJM is both an administrator and Payor of the Plan, this is only one factor in the Court's determination. The Court finds that the conflict is insufficient to show that Defendants' interpretation of the terms of the Plan was arbitrary and capricious.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment will be **GRANTED**.  Plaintiff's cross-motion for summary judgment will be **DENIED.**  An implementing order follows.